IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No:

KEN SCRIBNER,

    Plaintiff,

v.

DURANGO COCA-COLA BOTTLING COMPANY,

    Defendant.

---

**COMPLAINT AND JURY DEMAND**

---

Now comes the Plaintiff, Ken Scribner, by and through counsel, and for his Complaint against Defendant states as follows:

### I.     INTRODUCTION

1. Plaintiff was employed as a District Sales Manager for Defendant from August 2013 until he was abruptly terminated on or about July 12, 2019. Plaintiff was successful in his position at all times and never required disciplinary action. Plaintiff suffered a back injury while stocking shelves at work - an activity that was out of the scope of duties for a Sales Manager - on or about November 28, 2017. Plaintiff had to assume responsibilities as needed due to a shortage of employees. Plaintiff was immediately seen by a worker's compensation doctor, who communicated restrictions to Defendant during Plaintiff's seventeen-month recovery. Those included limited hours on non-sequential days, sedentary work and lifting limitations. None of the restrictions

prevented Plaintiff from performing any of the duties in his job description. Defendant adjusted Plaintiff's work schedule based on the doctor's restrictions without further discussion with Plaintiff. Plaintiff never needed or requested any other accommodations. Plaintiff received a maximum medical improvement diagnosis on April 25, 2019 that stated his lifting limitations of 30 pounds were permanent. Plaintiff continued to work as Sales Manager without any discussion or conversation with Defendant pertaining to his disability for eleven weeks. Defendant terminated Plaintiff with no warning or indication that there was a deficiency in Plaintiff's work performance on July 12, 2019.

## II.   PARTIES

2. Plaintiff, Ken Scribner, is an adult male who was employed by Defendant from August 2013 until July 2019 and is currently a citizen of Montrose County, Colorado.

3. Defendant Durango Coca-Cola Bottling Company is a Colorado Company with its principal place of business at 75 Girard St., Durango, La Plata County, Colorado, where Plaintiff was employed at all times.

## III.   JURISDICTION AND VENUE

4. This Court has subject matter jurisdiction over the federal causes of action in this Complaint pursuant to 28 U.S.C. § 1331, because they arise under the laws of the United States.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(a)(2) because Plaintiff was employed and terminated in this District and the Defendant is a local Colorado business conducting its services in throughout Southwest Colorado.

## IV.   ADMINISTRATIVE PROCEDURES

6. More than thirty days prior to the institution of this lawsuit, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), which was dually filed with the

Colorado Civil Rights Division (CCRD), alleging Defendant's violations of the ADA, ADEA, and CADA.

7. The EEOC provided Defendant with notice of the charges of discrimination.

8. The EEOC investigated the charges of discrimination.

9. Because more than 180 days passed since the charge was filed Plaintiff's charge was dismissed by the EEOC and CCRD without issuing a determination. The EEOC issued a notice of right to sue against the Defendant on February 24, 2023.

10. All administrative remedies and conditions precedent to the institution of this lawsuit have been exhausted and fulfilled.

**STATEMENT OF FACTS**

11. Plaintiff began employment with Defendant on or about August 19, 2013 as a District Sales Manager.

12. The District Sales Manager role is described as follows, per the 2014 title and description: "reports directly to the Sales Manager…supervises all Home Market Salesmen and Merchandisers…contracts and maintains a relationship with all Store Managers, as well as each account's District Managers…is responsible for all the sales of the Corporation through Home Market, Supermarkets, Mass Merchandisers, Independent Grocery Stores, Convenience Stores and any other accounts that handles future consumption products…will insure the implementation and execution of [Defendant's] sales and marketing strategies, merchandising, and company standards within the Home Market Customers…responsible to increase market share through display activity."

13. There is no mention in the District Manager job description that includes lifting or any other physical requirements.

3

14. Plaintiff was responsible for "supporting the sales team" and his subordinates were responsible for making deliveries and stocking shelves.

15. The job descriptions for those subordinate positions explicitly include lifting in the essential function sections with specific weight ranges for lifting, pushing and pulling merchandise and stock items.

16. Defendant never disciplined Plaintiff at any time during his employment.

17. Defendant never modified Plaintiff's job description to include physical labor related to his job.

18. Due to a shortage of help, Plaintiff had to assist his subordinates with stocking shelves.

19. Defendant was aware that there were insufficient staff to maintain deliveries, load or stock shelves, and that District Managers had to pick up slack beyond the scope of their duties.

20. Plaintiff suffered a mild back strain on or about September 2017 and was seen by a worker's compensation doctor for that injury.

21. Defendant was aware of Plaintiff's injury but continued to require Defendant to do physical labor outside his job description.

22. On or about November 28, 2017, Plaintiff moved three 24-packs and suffered sudden severe back pain with persistent spasm and intermittent leg pain.

23. Plaintiff immediately reported his injury and was taken to a worker's compensation doctor to receive treatment.

24. Plaintiff was treated with chiropractic massage and physical therapy and then received an epidural and sacroiliac injection for pain.

25. Plaintiff suffered persistent, moderately severe, chronic lower back pain, with foot tingling and limited range of motion from his diagnosed lumbar disc injury.

26. Plaintiff became severely depressed due to his reduced activity and chronic pain and was prescribed an antidepressant and counseling.

27. Plaintiff had no history of major back problems or depression prior to this incident.

28. On or about December 20, 2017, Plaintiff returned to work in a modified duty role with temporary restrictions including sedentary work, walking allowed, change position frequently, occasional bending, five pounds lifting/carrying, four hours per day in non-sequential days.

29. On or about February 8, 2018, Plaintiff's physician adjusted Plaintiff's restrictions to four hours per day in three non-sequential days and ten pounds lifting/carrying/pushing/pulling.

30. On or about February 22, 2018, Plaintiff's physician increased Plaintiff's restrictions to six hours per day in three non-sequential days, including all other previous restrictions.

31. On or about April 5, 2018, Defendant allowed Plaintiff to work eight hours per day in three non-sequential days, including all other previous restrictions.

32. On or about August 9, 2018, Plaintiff's physician updated Plaintiff's temporary restrictions to four days per week, with Wednesday off, including all other previous restrictions.

33. On or about October 31, 2018, Plaintiff's physician ordered the following temporary restrictions: ten pounds lifting/carrying/pushing/pulling; five days a week, 40 hours per week.

34. On or about December 13, 2018, Plaintiff's physician reduced Plaintiff's temporary work restrictions to fifteen pounds lifting/carrying/pushing/pulling.

35. In or about March 2019, Defendant held a meeting with all District Managers and Dave Gallegos, to update the District Sales Manager job description, because of Plaintiff's injury and restrictions.

36. On or about June 27, 2019, Defendant received notice from Plaintiff's physician, Dr. Randal Jernigan, that Plaintiff had reached maximum medical improvement (MMI). Dr. Jernigan converted his lifting restrictions from temporary to permanent, limited to thirty pounds.

37. Defendant had received at least seven different modifications for Plaintiff's work restrictions since his injury on November 28, 2017 – accommodating all without any discussion with Plaintiff.

38. Defendant did not engage Plaintiff verbally or in writing following his MMI to express any concern about his ability to perform the essential functions of a District Sales Manager, inadequate or insufficient work or performance, or to offer Plaintiff a different role to accommodate his permanent disability.

39. All of Plaintiff's work restrictions came directly from Plaintiff's physician and were immediately granted by Defendant without conversation with Plaintiff.

40. Plaintiff required no further accommodation and struggled naught to complete any tasks associated with his position.

41. Plaintiff never received an updated job description of the Sales Manager Position that included physical requirements to indicate that his permanent restriction would be an undue burden on the Defendant.

42. On or about July 12, 2019, Plaintiff was summoned to a meeting with Meredith Mapel, then President and CEO, and a Human Resources representative, where he was given a termination letter asserting Defendant could not modify the District Sales Manager job description to accommodate Plaintiff's permanent work restrictions.

43. Plaintiff was terminated eleven weeks after his permanent work restrictions were put in place without any warning.

44. Prior to his termination Defendant never communicated with Plaintiff in any way to communicate that he was failing to perform the functions of his job.

45. Prior to his termination, Defendant never engaged in an interactive process to determine which essential functions Plaintiff could not perform and whether reasonable accommodations were available.

46. Plaintiff was replaced by a much younger, less experienced, nondisabled employee who was immediately given a new company car, which Plaintiff had previously requested and been denied - despite Plaintiff's car being 18 thousand miles over Defendant's mileage policy.

47. Plaintiff is aware of at least two other employees who were injured and incapable of completing responsibilities listed in their job descriptions; Defendant created new jobs to accommodate them.

48. Plaintiff is also aware that Defendant has a policy, pattern, or practice of accommodating injured employees until they reach MMI, at which time Defendant terminates them claiming inability to accommodate.

49. Defendant was able to accommodate Plaintiff from November 2017 until July 2019, months after his restrictions became permanent.

## V. CAUSES OF ACTION

**FIRST CAUSE OF ACTION**
**(Discrimination and Wrongful Termination because of disability in violation of ADA and ADAAA – 42 U.S.C. §§ 12101, *et seq.* and in violation of CADA – C.R.S. §§ 24-34-401, *et seq.*)**

50. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

51. Plaintiff has a physical disability as defined by law.

52. At all relevant times, Plaintiff was qualified for his position.

53. At all relevant times, Defendant knew or should have known of Plaintiff's physical disability.

54. Defendant's conduct as alleged above constitutes wrongful discharge because of disability in violation of CADA, the ADA and the ADAAA.

55. Defendant's conduct and actions were intentional, willful, wanton, or malicious.

56. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer injury and damage for which he is entitled to compensation pursuant to CADA, the ADA and ADAA.

57. Because of Defendant's unlawful conduct, Plaintiff is entitled to judgment in his favor, and substantial economic, non-economic and punitive damages, in an amount to be proven at trial.

**SECOND CAUSE OF ACTION**
**(Failure to accommodate in violation of ADA and ADAAA – 42 U.S.C. §§ 12101, *et seq.* and CADA – C.R.S. §§ 24-34-401, *et seq.*)**

58. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

59. Plaintiff has a physical disability as defined by law.

60. At all relevant times, Plaintiff was qualified for his position.

61. At all relevant times, Defendant knew or should have known of Plaintiff's physical disability, including the date at which it became permanent.

62. Defendant was aware of and accommodated multiple temporary restrictions from Plaintiff's physician for two years without any issue and terminated Plaintiff because they could no longer accommodate him eleven weeks after receiving Plaintiff's MMI status.

63. Defendant did not engage in the interactive process with Plaintiff as there were no conversations, written or verbal, between Defendant and Plaintiff; all accommodations/restrictions

8

came directly from Plaintiff's doctor and were immediately accepted by Defendant until they became permanent.

64. Plaintiff requested accommodations through his worker's compensation physician, as he had done for the past 17 months. Plaintiff was unaware that he needed to make additional accommodation requests to keep his job following his MMI and permanent disability rating.

65. Defendant's conduct and actions were intentional, willful, wanton, or malicious.

66. As a direct result of Defendant's actions, Plaintiff suffered and continues to suffer injuries, damages, and losses in an amount to be determined at trial.

### THIRD CAUSE OF ACTION
**(Retaliation in violation of the ADA and ADAAA – 42 U.S.C. §§ 12101, *et seq*. and CADA – C.R.S. §§ 24-34-401, *et seq.*)**

67. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

68. Defendant terminated Plaintiff's employment shortly after Plaintiff's injuries and resulting restrictions were deemed permanent.

69. Defendant accommodated Plaintiff's restrictions for 17 months when the restrictions were temporary.

70. Plaintiff suffered adverse employment actions because of his protected activity of making a request through his physician for accommodations related to his permanent disability and related restrictions.

71. Defendant's conduct was intentional, willful, wanton, or malicious.

72. As a direct and proximate cause of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer injury and damage for which he is entitled to compensation pursuant to the ADA and ADAAA and CADA.

# FOURTH CAUSE OF ACTION
**(Discrimination because of age in violation of ADEA – 29 U.S.C. §§ 621, *et seq.* and CADA - C.R.S. §§ 24-34-401, *et seq.*)**

73. Plaintiff reasserts and realleges the allegations set forth in the above paragraphs.

74. Defendant terminated Plaintiff's employment because of his age.

75. But for Plaintiff's age, Defendant would not have terminated Plaintiff's employment.

76. The Defendant's stated reasons for its conduct were not the true reasons, but instead were pretext to hide Defendant's discriminatory animus.

77. Defendant's conduct as alleged above constitutes discrimination based on age in violation of ADEA.

78. As a direct and proximate cause of Defendant's unlawful retaliation, Plaintiff has suffered and continues to suffer injury and damage for which he is entitled to compensation pursuant to the ADEA and CADA.

## VI. PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgment against Defendant and prays for:

A. Compensation for the loss of all the income, benefits, and privileges incurred from July 12, 2019 through the date of reinstatement or trial, as well as reasonable front pay, which amount cannot yet be ascertained;

B. Other compensatory damages, including but not limited to compensation for damage to Plaintiff's reputation, emotional distress suffered because of Defendant's unlawful conduct, and all other noneconomic damages Plaintiff so incurred;

C. Liquidated damages;

D. Prejudgment interest and post-judgment interest;

E. Punitive damages;

F. Reasonable attorney fees incurred in this action, pursuant to federal law;

G. The costs of this action; and,

H. Any further relief provided by statute or law and that the Court deems just or equitable.

## VII. JURY TRIAL DEMAND

Plaintiff requests a trial by jury.

Dated this 19th day of May 2023.

By: *s/ David T. Albrechta*
David T. Albrechta, esq.
Eleni K. Albrechta, esq.
ALBRECHTA & ALBRECHTA, LLC
530 Main Avenue, Suite D3
Durango, Colorado 81301
Telephone: (970) 422-3288
E-mail: david@albrechtalaw.com
           eleni@albrechtalaw.com

Tod J. Thompson, Attorney at Law
810 Sycamore Street
Cincinnati, OH 45202
Telephone: (513) 322-4348
E-mail: tod@thompsonlaw.com

Joseph F. Albrechta, esq.
ALBRECHTA & COBLE, LTD.
2228 Hayes Avenue, Suite A
Fremont, OH 43420
Telephone: (419) 332-9999
E-mail: jalbrechta@lawyer-ac.com

*Attorney for Plaintiff Ken Scribner*